18-8025   adm   5/11/01

## IN THE SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL,   :    No. 2453 Disciplinary Docket No. 3

            Petitioner          :    No. 182 DB 2017

          v.               :    Attorney Registration No. 84132

JAMIE RAY-LEONETTI,         :    (Philadelphia)

            Respondent      :

## ORDER

**PER CURIAM**

    **AND NOW**, this 19th day of March, 2018, upon consideration of the Recommendation of the Three-Member Panel of the Disciplinary Board, the Joint Petition in Support of Discipline on Consent is granted, and Jamie Ray-Leonetti is suspended on consent from the Bar of this Commonwealth for a period of one year and one day. She shall comply with all the provisions of Pa.R.D.E. 217.

    Respondent shall pay the costs incurred by the Disciplinary Board in the investigation and prosecution of this matter.

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL    :   No. ____ Disciplinary Docket No. 3
             Petitioner    :
                          :   No. 182 DB 2017
        v.                :
                          :   Attorney Registration No. 84132
JAMIE RAY-LEONETTI         :
             Respondent   :   (Philadelphia)

RECOMMENDATION OF THREE-MEMBER PANEL
OF THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

The Three-Member Panel of the Disciplinary Board of the Supreme Court of

Pennsylvania, consisting of Board Members Douglas W. Leonard, Andrew J. Trevelise,

and John F. Cordisco, has reviewed the Revised Joint Petition in Support of Discipline on

Consent filed in the above-captioned matter on February 15, 2018.

The Panel approves the Revised Joint Petition consenting to a one year and one

day suspension and recommends to the Supreme Court of Pennsylvania that the

attached Petition be Granted.

The Panel further recommends that any necessary expenses incurred in the

investigation and prosecution of this matter shall be paid by the respondent-attorney as

a condition to the grant of the Petition.

_____
Douglas W. Leonard, Panel Chair
The Disciplinary Board of the
Supreme Court of Pennsylvania

Date: 2/23/18

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL, :
                    Petitioner  :
                                :  No. 182 DB 2017
                                :
         v.                     :
                                :  Atty. Reg. No. 84132
JAMIE RAY-LEONETTI,             :
                    Respondent  :  (Philadelphia)

### JOINT PETITION IN SUPPORT OF DISCIPLINE ON CONSENT UNDER RULE 215(d), Pa.R.D.E.

Petitioner, Office of Disciplinary Counsel ("ODC"), by Paul J. Killion, Esquire, Chief Disciplinary Counsel, and by Richard Hernandez, Esquire, Disciplinary Counsel, and Respondent, Jamie Ray-Leonetti, who is represented by Barbara S. Rosenberg, Esquire, file this Joint Petition In Support Of Discipline On Consent Under Pennsylvania Rule of Disciplinary Enforcement 215(d) ("the Joint Petition"), and respectfully represent that:

1. Petitioner, whose principal office is located at Pennsylvania Judicial Center, Suite 2700, 601 Commonwealth Avenue, P.O. Box 62485, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement ("Pa.R.D.E."), with the power and

**FILED**

FEB 1 3 2018

Office of the Secretary
The Disciplinary Board of the
Supreme Court of Pennsylvania

duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

2.     Respondent, Jamie Ray-Leonetti, was born in 1973, was admitted to practice law in the Commonwealth of Pennsylvania on November 1, 1999, and has a public access address at 1815 JFK Boulevard, Apt. 1705, Philadelphia, PA 19103.

3.     Pursuant to Pa.R.D.E. 201(a)(1), Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

4.     Respondent is aware that there is an open complaint file that is under investigation by ODC, File No. C1-16-474.

5.     In connection with File No. C1-16-474, Respondent received a Request for Statement of Respondent's Position (Form DB-7) dated October 12, 2016; by letter dated November 11, 2016, Respondent submitted a counseled response to the DB-7 letter.

6.     Respondent has agreed to enter into a joint recommendation for consent discipline that encompasses the allegations of misconduct raised in File No. C1-16-474.

2

## SPECIFIC FACTUAL ADMISSIONS AND
## RULES OF PROFESSIONAL CONDUCT VIOLATED

7. Respondent hereby stipulates that the following factual allegations are true and correct and that she violated the Rules of Professional Conduct as set forth herein.

### CHARGE

8. Respondent investigated whether Ms. Josephine Cleary and Mr. James Cleary ("the Clearys") had a basis to pursue a medical malpractice claim against Jefferson Health System, Doylestown Women's Health Center, Dr. Carolyn E. Ianieri, and Dr. Tuan A. Le.

9. On February 15, 2014, Respondent commenced a lawsuit on behalf of the Clearys in the Philadelphia Court of Common Pleas by filing a Praecipe to Issue Writ of Summons, said case captioned *Josephine Cleary et al. vs. Jefferson Health System et al.*, docket number 140201495 ("the Cleary lawsuit").

10. The Cleary lawsuit was scheduled for an arbitration hearing on November 3, 2014, at 2:00 p.m. at the Arbitration Center.

11. Respondent received notice of the scheduling of the arbitration hearing.

12. On November 17, 2014, Respondent became employed as a staff attorney with the Disability Rights Network of

3

Pennsylvania ("DRN").

13.  In November 2014, Respondent filed an application to have the arbitration hearing continued.

14.  Respondent's request for a continuance of the arbitration hearing was granted and the arbitration hearing was rescheduled to January 9, 2015, at 10:45 a.m. at the Arbitration Center.

15.  Respondent received notice of the new date and time of the arbitration hearing.

16.  On or about January 5, 2015, Respondent filed a second application to have the arbitration hearing continued.

17.  Respondent's second request for a continuance of the arbitration hearing was granted and the arbitration hearing was rescheduled to March 6, 2015, at 10:45 a.m. at the Arbitration Center.

18.  Respondent received notice of the new date and time of the arbitration hearing.

19.  Respondent advised the Clearys that the arbitration hearing was rescheduled to March 6, 2015, at 10:45 a.m. at the Arbitration Center.

20.  Respondent failed to file a Complaint in the Cleary lawsuit.

21.  On March 5, 2015, Respondent sent an email to Ms. Cleary in which Respondent represented to her that Respondent

4

had just been notified that the March 6, 2015 arbitration
hearing was postponed and would be rescheduled because the
Philadelphia Courts were closed on March 5, 2015.

22.   The March 6, 2015 arbitration hearing had not been
postponed.

23.   Respondent misrepresented to Ms. Cleary that the
March 6, 2015 arbitration hearing had been postponed and would
be rescheduled to a new date.

24.   Respondent and the Clearys failed to appear for the
March 6, 2015 arbitration hearing.

25.   The defendants and counsel for the defendants
appeared for the arbitration hearing.

26.   With the consent of the defendants and counsel for
the defendants, the Cleary lawsuit was transferred to the
Philadelphia Court of Common Pleas to be heard by a judge
pursuant to Pa.R.C.P. 1303(b)(2) and Phila.Civ.R. 1303(a).

27.   By Order dated March 6, 2015, docketed on March 9,
2015, the court entered a judgment of non pros against the
Clearys in the Cleary lawsuit.

> a.   In the March 6, 2015 Order, the court noted
> that a review of the docket showed that a
> Complaint had not been filed.

28.   On March 9, 2015, the court sent to Respondent a
Notice about the entry of the March 6, 2015 Order.

29.   Respondent received and reviewed the Notice of the entry of the March 6, 2015 Order.

30.   Respondent failed to take any action in response to the Notice.

31.   Respondent failed to advise the Clearys about the entry of the March 6, 2015 Order in the Cleary lawsuit.

32.   Between March 6, 2015 and March 2, 2016, Respondent exchanged a series of emails with Ms. Cleary.

33.   In those emails, Respondent misrepresented to Ms. Cleary that:

    a.   the arbitration hearing would be rescheduled (3/6/15 and 3/9/15);

    b.   there was no need for an arbitration hearing because the defendants had agreed to settle the Cleary lawsuit (5/27/15, 5/28/15, and 5/29/15);

    c.   the Clearys would receive $50,000.00 as a result of the settlement (1/14/16);

    d.   Respondent was waiting to receive the settlement check (9/23/15 and 11/17/15);

    e.   Respondent was communicating with counsel for the defendants and the insurance carrier about the delay in issuing the settlement check (10/5/15, 10/6/15, 10/13/15, 10/28/15, and

6

11/16/15);

f.   Respondent had received the settlement check but a problem arose over how it was made payable (12/4/15);

g.   Respondent was waiting for the check to clear before Respondent distributed to the Clearys their share of the settlement proceeds (12/8/15, 12/9/15; 12/11/15, and 1/5/16);

h.   the check had been deposited into an account maintained by DRN (12/8/15, 12/9/15, 12/11/15, and 1/5/16);

i.   a portion of the settlement proceeds would be used by DRN to mail checks to satisfy outstanding tuition bills the Clearys owed to Archbishop Wood Catholic High School ("Wood HS") and Bucks County Community College ("BCCC") (1/14/16);

j.   DRN had issued a check made payable to Smart Tuition, a company that processed tuition payments for Wood HS, to cover the outstanding tuition bill the Clearys owed to Wood HS (12/17/15);

k.   the check that DRN had issued to Smart Tuition had been returned to DRN (1/4/16);

7

l.    Respondent had arranged for Smart Tuition to receive the tuition payment electronically (2/4/16, 2/5/16, and 2/16/16);

m.    various circumstances arose that resulted in a delay in DRN's issuing a settlement check to the Clearys (12/9/15, 12/10/15, 12/11/15, 1/21/16, 2/17/16, and 2/18/16);

n.    mail delivery problems resulted in a delay in the Clearys' receiving a check for their share of the settlement proceeds (1/28/16 and 2/2/16);

o.    transportation problems hindered Respondent from being able to deliver to the Clearys a check for their share of the settlement proceeds (2/23/16, 3/1/16, and 3/2/16);

p.    the Clearys would be receiving an additional $5,000.00 because of the various problems that arose in the Clearys' receiving prompt payment of the settlement proceeds (1/12/16, and 1/14/16); and

q.    Respondent had arranged for the Clearys to receive their share of the settlement proceeds by means of a wire transfer from DRN to a bank account maintained by the Clearys (2/16/16,

2/24/16, and 2/29/16).

34.  Ms.  Cleary  made  an  appointment  to  meet  with
Respondent  at  the  Philadelphia  office  for  DRN  on  March  7,
2016,  to  discuss  the  delay  in  the  Clearys'  receiving  their
share  of  the  settlement  proceeds  and  in  the  payments  of  the
outstanding  tuition  bills  owed  to  Wood  HS  and  BCCC.

35.  The  March  7,  2016  meeting  was  cancelled  because  of
a  medical  emergency  involving  Respondent's  husband.

36.  On  March  7,  2016,  Respondent  and  Ms.  Cleary  spoke
on  the  telephone,  during  which  conversation  Respondent:

      a.    admitted  to  Ms.  Cleary  that  Respondent  had  not
           settled  the  Cleary  lawsuit;  but

      b.    failed  to  advise  Ms.  Cleary  that  the  Cleary
           lawsuit  had  been  dismissed  and  the  reasons
           therefor.

37.  On  March  8,  2016,  Ms.  Cleary  sent  Respondent  an
email  asking  Respondent  to  explain  why  the  Cleary  lawsuit  had
not  settled.

38.  On  March  8,  2016,  Respondent  sent  a  reply  email  to
Ms.  Cleary,  in  which  Respondent  asked  for  "a  little  time  to
do  a  complete,  clear  response...."

39.  On  March  9,  2016,  Ms.  Cleary  sent  Respondent  an
email  and  inquired  if  a  malpractice  case  had  been  filed  on
her  behalf  because  she  was  unable  to  locate  the  case.

9

40.   On March 9, 2016, Respondent sent a reply email to
Ms. Cleary in which Respondent, *inter alia*:

       a.   stated that Respondent would provide her with
the docket number when Respondent was back in
the office; and

       b.   claimed that the reason the Cleary lawsuit had
not settled was due to a "breakdown of
discussions when the hospital placed a
different lawyer (same firm but different
lawyer) on the case in a sort of last minute
move."

41.   On March 9, 2016, Ms. Cleary sent Respondent a
second email in which she, *inter alia*:

       a.   stated that she was "still trying to process
everything and the disaster it has left my
life in with bills and my son"; and

       b.   inquired if her case was "done" or if the case
was "still being negotiated."

42.   On March 9, 2016, Respondent sent a second email to
Ms. Cleary in which Respondent represented to her that
Respondent could "continue to negotiate" and that Respondent
believed "there could be a good outcome."

43.   Again Respondent failed to advise Ms. Cleary that
the Cleary lawsuit had been dismissed.

44. Respondent misrepresented to Ms. Clearly that it was still possible to "negotiate" a resolution of the Cleary lawsuit that could result in a "good outcome."

45. On March 10, 2016, Respondent sent an email to Ms. Cleary that contained an email that Respondent had received from the First Judicial District confirming that Respondent had filed legal paperwork electronically to commence the Cleary lawsuit.

46. On March 10, 2016, Ms. Cleary sent Respondent a reply email that thanked Respondent for the March 10, 2016 email.

47. Again Respondent failed to advise Ms. Cleary that the Cleary lawsuit had been dismissed.

48. During the period that Respondent sent Ms. Cleary a series of emails that contained misrepresentations, Respondent also sent several emails to third parties that contained misrepresentations.

49. With respect to Wood HS, Respondent sent emails dated January 8, 2016 and February 23, 2016, addressed to Sister Maryanna Baranoski, the Secretary to the President for Wood HS, in which Respondent misrepresented that DRN had sent payments on several occasions to Smart Tuition to satisfy the tuition bill that the Clearys owed to Wood HS.

11

50.   With respect to BCCC, Respondent sent emails dated January 7, 2016 and February 16, 2016, in which Respondent misrepresented that the Clearys were expected to receive settlement proceeds "next week" that they could apply toward satisfying the outstanding tuition bill owed to BCCC.

> a.   The February 16, 2016 email was addressed to Mr. Ralph Vaden, Student Accounts Coordinator for BCCC.

51.   With respect to Smart Tuition, Respondent sent a January 4, 2016 email to Sylvia Wilson, Customer Service Team Lead/Supervisor for Smart Tuition, in which Respondent misrepresented that a check that DRN had sent to Smart Tuition had been returned to DRN and that Respondent required information from Ms. Wilson in order to re-send the check to Smart Tuition.

52.   By her conduct as alleged in paragraphs 8 through 51 above, Respondent violated the following Rules of Professional Conduct:

> a.   RPC 1.3, which states that a lawyer shall act with reasonable diligence and promptness in representing a client;

> b.   RPC 1.4(a)(3), which states that a lawyer shall keep the client reasonably informed about the status of the matter;

12

c.   RPC 1.4(b), which states that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation;

d.   RPC 4.1(a), which states that in the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person; and

e.   RPC 8.4(c), which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## SPECIFIC JOINT RECOMMENDATION FOR DISCIPLINE

53.   Petitioner and Respondent jointly recommend that the appropriate discipline for Respondent's admitted misconduct is a suspension of one year and one day.

54.   Respondent hereby consents to that discipline being imposed upon her by the Supreme Court of Pennsylvania. Attached to this Petition is Respondent's executed Affidavit required by Rule 215(d), Pa.R.D.E., stating that she consents to the recommended discipline, including the mandatory acknowledgements contained in Rule 215(d)(1) through (4), Pa.R.D.E.

13

55.    In support of Petitioner and Respondent's joint
recommendation, it is respectfully submitted that there are
several mitigating circumstances:

   a.    Dr. Susan E. Rushing, a board-certified
         psychiatrist, prepared a report dated January
         2, 2017, in which Dr. Rushing diagnosed
         Respondent with Complex Post Traumatic Stress
         Disorder ("C-PTSD"), a "condition that results
         from chronic or long-term exposure to
         emotional trauma over which a victim has
         little or no control and from which there is
         little or no hope of escape." A redacted copy
         of Dr. Rushing's report, which discusses
         Respondent's diagnosis, treatment, and
         prognosis, is appended as Attachment A.    A
         redacted copy of a May 3, 2017 letter
         addressed to Respondent's counsel, Barbara S.
         Rosenberg, Esquire, from [C], a licensed
         clinical psychologist, which provides an
         update on Respondent's treatment, is appended
         as Attachment B.    A redacted copy of a June
         20, 2017 letter addressed to Ms. Rosenberg
         from [A], a psychiatrist, which states that
         Respondent has been compliant with the

14

treatment recommendations and prescribed medications, is appended as Attachment C.[1]

b.  Respondent has established that there is a causal connection between her misconduct and her mental condition so as to constitute mitigation under *Office of Disciplinary Counsel v. Braun,* 553 A.2d 894 (Pa. 1989).

c.  Respondent has admitted engaging in misconduct and violating the charged Rules of Professional Conduct.

d.  Respondent has cooperated with Petitioner, as is evidenced by Respondent's admissions herein and her consent to receiving a suspension of one year and one day.

e.  Respondent is remorseful for her misconduct and understands she should be disciplined, as is evidenced by her consent to receiving the discipline jointly-recommended herein.

56. An aggravating factor is Respondent's record of discipline consisting of a private reprimand, with a one-year

---

[1] ODC and Respondent are submitting **unredacted** copies of Attachments A-C to the designated Board Review Panel. By Order dated November 21, 2017, the Board Chair granted an application pursuant to Pa.R.D.E. 402(f) that the unredacted medical reports be kept under seal and not become part of the public record that will be created if the Court enters an order granting the joint petition and imposing public discipline.

period of probation, with conditions, for having violated RPC
1.3, RPC 1.4(a)(3), RPC 1.4(b), RPC 4.1(a), and RPC 8.4(c).
On December 14, 2015, Respondent was administered the private
reprimand.  In that matter Respondent:  failed to diligently
pursue an employment discrimination and wrongful termination
case on behalf of a client; failed to provide the client and
the client's son-in-law with accurate information when they
inquired about the client's legal matter and to provide the
client with information she needed to make an informed
decision regarding the representation; and made multiple
misrepresentations to the client and the son-in-law regarding
the status of the client's employment discrimination and
wrongful termination case.    The conditions required
Respondent:  to continue to take her prescribed medication;
to continue to undergo counseling as prescribed by her
therapist; and to file with the Secretary's Office quarterly
reports from her therapist.    The sanction recommendation
relied on a December 2014 report prepared by Dr. Rushing. *See*
Attachment A, p. 1.  In that earlier report, Dr. Rushing had
concluded that when Respondent had engaged in misconduct in
the client's legal matter, Respondent was suffering from a
major depressive disorder. *Id.* at pp. 6-7.    By Order dated
December 1, 2016, the Disciplinary Board Chair terminated
Respondent's    probation.      Significantly,    Respondent's

16

misconduct in the current matter involving the Clearys overlapped with the aforementioned one-year probationary period served by Respondent.

57. ***Office of Disciplinary Counsel v. Marc D. Collazzo***, No. 165 DB 2010 (Recommendation of Three-Member Board Panel 11/1/10)(S.Ct. Order 11/30/10), a disciplinary matter in which the Court approved a suspension on consent for a period of one year and one day, supports the sanction recommendation.

In ***Collazzo***, ODC and Collazzo filed a Joint Petition in Support of Discipline on Consent ("Collazzo Petition") that recommended that Collazzo be suspended for one year and one day for having: failed to timely advise his client, Ms. Deborah VonBerg, that a lawsuit that Collazzo had filed in federal court on behalf of Ms. VonBerg had been dismissed on statute of limitations grounds and that she had a right to file an appeal; made misrepresentations to Ms. VonBerg that caused her to believe that her lawsuit would be proceeding to a hearing; and failed to respond to Ms. VonBerg's voicemail messages. Collazzo Petition 3-7. During the same time period that Collazzo was mishandling Ms. VonBerg's lawsuit and making misrepresentations to Ms. VonBerg, Collazzo was the subject of a disciplinary complaint filed by Mr. Philip Klear and Ms. Libby Klear ("the Klears") and had participated in a disciplinary hearing after our Court had rejected a joint

17

petition for a consent suspension of three months; Collazzo's
misconduct involved making numerous intentional and material
misrepresentations to the Klears and his former supervising
attorney. Collazzo Petition 4-5, 9.  Approximately two weeks
after the disciplinary hearing was held in the disciplinary
matter involving the Klears, Collazzo sent a letter to Ms.
VonBerg in which he stated that he was unable to continue to
represent her; however, he failed to advise Ms. VonBerg that
her lawsuit had been dismissed and to provide her with
documents related to the dismissal of her lawsuit. Collazzo
Petition 6-7.  The Court ordered that Collazzo be administered
a public censure for his misconduct in the Klears'
disciplinary matter. Collazzo Petition 6.

At the hearing involving the Klears' disciplinary matter,
Collazzo and Collazzo's psychiatrist had testified that
Collazzo was "successfully using techniques to address the
issues that had led to his previous misrepresentations" to
the Klears and his former supervising attorney. Collazzo
Petition 4, 9.  Collazzo's misconduct in Ms. VonBerg's legal
matter, which coincided with the hearing held in the Klears'
disciplinary matter, showed that there were "still
substantial questions about [Collazzo]'s fitness to practice
law and capability of being honest." Collazzo Petition 9.
ODC and Collazzo proposed a consent suspension of one year

and one day so that Collazzo would have to "demonstrate his fitness to practice law prior to being re-admitted." *Id.*

There are several ways in which Respondent's matter and *Collazzo* are similar. Both Respondent and Collazzo had: been found to have previously made misrepresentations to their clients; received psychiatric treatment to address the issues that had led to their misconduct; and repeated their misconduct by making misrepresentations to other clients after becoming involved in the disciplinary process and receiving psychiatric treatment.

In light of *Collazzo* and Respondent's recidivism after having received private discipline and probation, and pattern of misrepresentations, a suspension of one year and one day is sufficiently lengthy to advance the goals of attorney discipline—protecting the public, maintaining the integrity of the courts and the legal profession, and specific and general deterrence. *See Office of Disciplinary Counsel v. Keller*, 506 A.2d 872, 875 (Pa. 1986); *In re Iulo,* 766 A.2d 335, 338-339 (Pa. 2001).

WHEREFORE, Petitioner and Respondent respectfully request that:

      a.      Pursuant to Rule 215(e) and 215(g), Pa.R.D.E., the Three-Member Panel of the Disciplinary Board review and approve the above Joint

19

Petition In Support Of Discipline On Consent and file its recommendation with the Supreme Court of Pennsylvania in which it is recommended that the Supreme Court enter an Order that Respondent receive a suspension of one year and one day, and that Respondent comply with all of the provisions of Rule 217, Pa.R.D.E.

b.    Pursuant to Pa.R.D.E. 215(i), the Three-Member Panel of the Disciplinary Board enter an order for Respondent to pay the necessary expenses incurred in the investigation and prosecution of this matter, and that under Pa.R.D.E. 208(g)(1) all expenses be paid by Respondent within 30 days after the notice of the taxed expenses is sent to Respondent.

Respectfully and jointly submitted,

OFFICE OF DISCIPLINARY COUNSEL

PAUL J. KILLION
CHIEF DISCIPLINARY COUNSEL

_Feb. 12, 2018_                    By _____
Date                                   Richard Hernandez
                                       Disciplinary Counsel

20

By _____
_____
Date

Jamie Ray-Leonetti, Esquire
Respondent

$2/5/18$

By _____
_____
Date

Barbara S. Rosenberg, Esquire
Respondent's Counsel

21

2/9/18
Date

By _____
Jamie Ray-Leonetti, Esquire
Respondent

Date

By _____
Barbara S. Rosenberg, Esquire
Respondent's Counsel

21

# ATTACHMENT A

# REDACTED

**REDACTED**

Susan E. Rushing, MD, JD
385 Lancaster Ave, Suite 206
Haverford, PA 19041

Phone: 610-726-1020                    Fax: 610-726-1335

January 2, 2017

Barbara S. Rosenberg, Esquire
Law Office of Barbara S. Rosenberg
1060 First Avenue, Suite 400
King of Prussia, PA 19406
barbara@paethicscounsel.com
*Re: Jamie Ray-Leonetti*

Dear Ms. Rosenberg,

In accordance with your request, I have prepared a psychiatric report regarding the above captioned matter. This report is based on materials received from you and psychiatric examinations of Ms. Ray-Leonetti (DOB [ ])        that I performed in my Haverford, PA office on 10/13/2016.

It is my understanding that you are seeking my opinion as to the current state of health of Ms. Ray-Leonetti, an attorney, who is currently on probation following a prior complaint to the Disciplinary Board of the Supreme Court of Pennsylvania. I previously evaluated Ms. Ray-Leonetti on November 19, 2014 and December 3, 2014 and submitted a report, which will be attached as an exhibit. Specifically, you have asked me whether your client has signs or symptoms of a mental illness currently; and if so, whether these signs and symptoms were present at the time of the alleged conduct towards Mr. and Ms. Cleary.

I am qualified to provide opinions pertaining to this issue based on my training in psychiatry and forensic psychiatry and my work as an attending psychiatrist at the University of Pennsylvania as detailed in my Curriculum Vitae. I am being compensated for my expert witness services and all of my opinions are made within a reasonable degree of medical certainty.

I have reviewed the following documents:

1. Letter from the Disciplinary Board of the Supreme Court of Pennsylvania dated 10/12/2016
2. Letter from Barbara Rosenberg, Esq. re: Jamie Ray-Leonetti, Esq. dated 11/11/2016
3. Letter from Barbara Rosenberg, Esq. re: Jamie Ray-Leonetti, Esq. dated 12/10/2014
4. Psychiatric Evaluation from Dr. Susan Rushing dated 12/11/2014
5. Neuropsychological Evaluation by Brenda Ivker, PhD dated 08/13/2007

I conducted collateral interviews with:

1. Treating psychiatrist      [A]          , MD, on 10/27/2016
2. Treating psychotherapist   [B]          on 10/27/2016
3. Treating psychotherapist   [C]          , Ph.D. on 01/02/2017

Barbara S. Rosenberg, Esquire
November 29, 2016
Page 2


I.   <u>Overview of Interview and Record Review</u>

Ms. Jamie Ray-Leonetti  [   ]       is a 42-year-old female attorney, who is currently employed
at                         [D]
Ms. Ray-Leonetti has a medical history significant for preterm birth [and attendant conditions]
            [    ]                                   . Ms. Ray-Leonetti reported that she
developed    [        ]                            , severe anxiety and depression [and
related physiological conditions] while working as an attorney for the


                 [E]                      . Ms. Ray Leonetti was employed by
   [E]              for approximately  [   ]   years from  [  ]  .

During my prior 2014 interview, Ms. Ray-Leonetti shared information about her work
environment and interactions with  [F].


                    [                      ]



                                                         . In [  ],
  [  ]        recommended that she have a neuropsychological evaluation. During this evaluation
it was noted that she had slowed visual processing and recommendations for accommodations
were made.          [                    ]
                                                                      . Ms.
Ray-Leonetti believed that the [physical] symptomology]                   ; that she
developed in [  ] and [  ] were a result of her stressful work environment.



                    [                      ]



                    . In  [  ], Ms. Ray-Leonetti married    [G]
who has a disabling medical condition            [      ]
       . Ms. Ray-Leonetti is the primary care-taker for    [G]       , who has had
several hospitalizations. Ms. Ray-Leonetti stated that      [G]      , was quite ill in 2012 and
in 2013. Ms. Ray-Leonetti said that after one particularly bad fall in November of 2013,   [G]
          entered the hospital and required inpatient rehabilitation until January 2014. During the
same time period,    [G's]          father died suddenly and unexpectedly  [    ]      on
December 8, 2012.    [G's]          father had been an important care giver and was the one
who usually took    [G]          to medical appointments. The loss of    [G's]
father was devastating to the couple.

During this time period, despite immense stress, Ms. Ray Leonetti continued working. She said that she was not sleeping well. When she did fall asleep, she was having anxious dreams [          ] . She said that she felt nervous and jumpy most of the time. Her mood began to transition from sad to hopeless. There were times when Ms. Ray-Leonetti wished that she would not wake up in the morning. Ms. Ray-Leonetti described experiencing a severe depression [      ] and a mood disorder than progressed to psychosis. She described auditory hallucinations and brief intervals in which she lost touch with reality.

During our interview in November and December 2014, Ms. Ray-Leonetti stated that most of her severe psychiatric symptoms had cleared. She stated that she no longer felt [      ] . She continued to describe intense anxiety. Weekly therapy and continued medication were recommended. In December 2014, she was hopeful that transitioning out of [E] and into a new work environment would prevent continued interaction with [F] . She stated that [F] continued to contact her both at work and at home . [      ] after she transitioned to working at [D] . She did not experience the separation from [F] that she had desired and her anxiety continued.

According to documents provided by counsel in February 2014, Ms. Ray-Leonetti filed a Writ of Summons on behalf of Mrs. Beverly Cleary in order to toll the statute of limitations on a medical malpractice claim. Mrs. Cleary had been Ms. Ray-Leonetti's client since [      ] and she stated that she felt an obligation to assist Mrs. Cleary with any legal issues that arose. Ms. Ray-Leonetti stated that she had reviewed the records associated with the medical malpractice claim under the supervision of a partner [H] . She attempted to find a physician to certify the case but was unable to do so. Accordingly, [H] had declined to accept the case. It is unclear how [H's] refusal to take the case was communicated to Mrs. Cleary as Ms. Ray-Leonetti described Mrs. Cleary calling her in desperation and begging for help.

Ms. Ray-Leonetti said that she attempted to tell Mrs. Cleary how to file the case on her own but Mrs. Cleary needed assistance. She felt it was her duty to help her client even if she couldn't serve as an attorney in the medical malpractice lawsuit. She felt that Mrs. Cleary would be able to find an attorney for the case because a medical error was made. [      ] . This caused her pain and she needed a second surgery [      ] . She stated that Mrs. Cleary did not have a way to file the claim online and Mrs. Cleary needed assistance requesting that filing fees be waived. Ms. Ray-Leonetti claimed that she did not intend to become counsel associated with the case by filing the claim online for Mrs. Cleary.

The case was originally scheduled for arbitration in November 2014. Ms. Ray-Leonetti stated that she planned to appear at the arbitration only to request a continuance so that the Clearys could find a new lawyer. However, Ms. Ray-Leonetti's husband was hospitalized and she sent a letter requesting a continuance. The hearing was continued twice to allow the Clearys time to locate counsel. The arbitration was scheduled for March 6, 2014. There was a snow storm on March 6, 2014 and Ms. Ray-Leonetti erroneously believed that the hearing was cancelled and told the

Case: 18-3025   Document: 003112894044   Page: 28   Date Filed: 04/04/2018

Barbara S. Rosenberg, Esquire
November 29, 2016
Page 4

Clearys the arbitration would be rescheduled. It appears the arbitration was not cancelled and plaintiffs appeared at the hearing. The case was scheduled for trial but thrown out on March 9, 2014 due to the fact that no complaint was filed and the plaintiffs failed to appear for arbitration. Ms. Ray-Leonetti did not inform the Clearys of the case status following the dismissal. Ms. Ray-Leonetti stated that she believed that the defense attorney had erred in not sending her a particular document and that this error would allow the case to move forward.

An increase in deceptive behavior, similar to that seen in        [I]                          case , appears to have begun around May 2015, when Ms. Ray-Leonetti informed the Clearys that a settlement had been reached and that they would be receiving money, when in fact no settlement was reached. Ms. Ray-Leonetti continued to assist Mrs. Cleary in other legal matters related to her son's disability. Mrs. Cleary reached out to Ms. Ray-Leonetti over the summer in 2015 due to her inability to pay her sons' private high school and community college tuitions. Mrs. Cleary appeared to be depending on a settlement of the medical malpractice claim to pay these bills. According to Ms. Ray-Leonetti, Mrs. Cleary seemed desperate and upset during these interactions. Ms. Ray-Leonetti became anxious and felt responsible for the Clearys financial situation. Ms. Ray-Leonetti composed letters to the schools informing them that she was working with Mrs. Cleary on her medical malpractice claim and wrote that she anticipated that Mrs. Cleary would receive funds from the lawsuit. There are emails from September through November 2015 in which Ms. Ray-Leonetti claims that there are delays in receiving the settlement check. Ms. Ray-Leonetti felt so badly for the Clearys that she used her own funds to pay a portion of the community college tuition. She again helped the Cleary family financially around the holiday in 2015 when Mrs. Cleary made her feel that she had ruined Christmas. There are emails sent in December 2015 and January 2016 in which Ms. Ray—Leonetti claims that her firm received the check and was distributing the funds. Emails regarding delays continue through February 2016. On March 7, 2016, Ms. Ray-Leonetti informed Mrs. Cleary that the lawsuit had not been settled and that the lawsuit had been dismissed.

Ms. Ray-Leonetti stated that she was under tremendous stress and experiencing high levels of anxiety throughout the Cleary interactions. Ms. Ray-Leonetti was in therapy during this timeframe but did not inform her therapist of the situation or seek advice related to the situation. Ms. Ray-Leonetti's therapist    [B]        , did believe that Ms. Ray-Leonetti was experiencing anxiety during this timeframe.

During the October 2016 evaluation, Ms. Ray-Leonetti described symptoms consistent with depression, anxiety as well as symptoms typically indicative of PTSD.  PTSD can be conceptualized as a combination of depression and severe anxiety with added symptoms such as depersonalization, derealization and dissociation. In addition, four distinct diagnostic symptom clusters for PTSD include: re-experiencing, avoidance, negative cognitions/mood, and arousal. Re-experiencing covers spontaneous memories of the traumatic event, recurrent dreams related to it, flashbacks or other intense or prolonged psychological distress. Avoidance refers to distressing memories, thoughts, feelings or external reminders of the event. Negative cognitions and mood can be feelings, a distorted sense of blame of self or others, estrangement from others, markedly diminished interest in activities, or an inability to remember key aspects of the event. Arousal is marked by aggressive, reckless or self-destructive behavior, sleep disturbances, hyper-vigilance or

Barbara S. Rosenberg, Esquire
November 29, 2016
Page 5

related problems.

Ms. Ray-Leonetti described depressive symptoms including frequent sadness, tearfulness low motivation and self-doubt. She reported high anxiety most days. She reported that she sometimes has panic attacks and other times anxiety leads to her experiencing a tingling sensation in her arms. In addition, she stated that her sleep is disturbed. She reported difficulty falling asleep and awakening due to nightmares. She stated that at times she experiences racing thoughts when she is anxious.

Ms. Ray-Leonetti stated that she has intrusive recollections of her prior work with [F]. She said that she often hears [F's] voice when [F] is "nowhere to be found."

[               ]

She said that if she is at home when she hears these things, she realizes that [F] is not in her house. However, if she's in the office, she sometimes mistakes her thoughts for real voices and believes that [F] may be visiting the office. She said that she frequently awakens after dreaming about real situations that happened in her prior office at [B]

[               ]

[               ]

Ms. Ray-Leonetti stated that she was anxious and jumpy in the office at [E] and currently feels the same level of intense anxiety when she recalls the events today whether as an intrusive memory or in her sleep.

[               ]

. The arousal element of PTSD can be marked by reckless and self-destructive behaviors. Ms. Ray-Leonetti's actions toward the Clearys is both reckless and self-destructive as she is already on probation for similar conduct.

[               ]

## II.    Past Psychiatric History

Ms. Ray-Leonetti received psychotherapy from [J] from 2007, until

Barbara S. Rosenberg, Esquire
November 29, 2016
Page 6

    [J's]        sudden death in 2014. Records were not available but Ms. Ray-Leonetti believed that she was diagnosed with depression and anxiety. Ms. Ray-Leonetti's entered treatment with    [K]    in July 2014. She noted symptoms of anxiety and panic related to a stressful work environment and grief-related to the sudden death of her previous therapist.    [K]    had given Ms. Ray-Leonetti the diagnoses of adjustment disorder and rule/out post-traumatic stress disorder.

When Ms. Ray-Leonetti was placed on probation, she sought out more intensive therapy and has been in treatment with    [B]   . Ms. Ray-Leonetti has also recently begun seeing psychiatrist   [A]  , who is treating her for complex-PTSD.

Medical records indicated a history of panic attacks and an anxious reaction that lead to an emergency room visit. Ms. Ray-Leonetti described a history of depression that progressed to a severe level. She began experiencing   [  ]   psychotic symptoms including auditory hallucinations and brief intervals in which she lost touch with reality. She denies having experienced suicidal ideation during her current mood episode.

## III.   Medications

    [     ]
    [     ]
    [     ]
    [     ]
    [     ]
    [     ]
    [     ]

## IV.   Mental Status Evaluation

Jamie Ray-Leonetti is a 42-year-old female who appeared older than her stated age. She walked with a gait abnormality that was typical of individuals with  [  ] . She required railing for support when ascending and descending the stairs. Her right eye was  [  ]  and she wore glasses. She was well groomed and her dress was professional. Her speech was of normal volume and rate. Her mood was reported as "anxious." Her affect was anxious and restricted. Her thinking was linear and reality based. She reported occasional auditory hallucinations of  [F] , which she perceived as "thoughts" when at home had believed that she truly was hearing  [F's]  voice when at work at  [E] . She denied a current suicide plan or intent. She denied current homicidal ideation, plans and intent. Ms. Ray-Leonetti was given the Montreal Cognitive Assessment (MOCA) and scored 26/30, a normal score. Insight and judgment were fair.

## V.   Discussion

During my 2014 examination of Ms. Ray-Leonetti, I noted that she reported symptoms consistent with having had experienced major depressive disorder with psychosis. At the time of my 2014 examination, Ms. Ray-Leonetti was not reporting symptoms consistent with psychosis such as

Barbara S. Rosenberg, Esquire
November 29, 2016
Page 7

auditory hallucinations or believing that she was taking part in negotiations that were not actually in progress. She explained that her interactions with her prior client [I]     felt reality based as she engaged in the deceptive behaviors but admitted that she was unable square her behavior with facts that were apparent to her when she looked back over her behavior in 2014. At the time of the 2014 evaluation, Ms. Ray-Leonetti was not reporting any symptoms consistent with psychosis such as losing touch with reality. I did note during the evaluation that Ms. Ray-Leonetti "remained anxious and had symptoms such as nightmares and intrusive thoughts that are common in individuals who have experienced trauma."

It is now clear that Ms. Ray-Leonetti has engaged in similar deceptive behavior with a second client and that this behavior was in progress around the time of my evaluation, following the evaluation and during the probationary period. Ms. Ray-Leonetti is currently in treatment with psychiatrist Dr. [A.]         [A]   diagnosed Ms. Ray-Leonetti with Complex Post Traumatic Stress Disorder (C-PTSD).

At the time of the initial evaluation, I did not discuss post-traumatic stress disorder (PTSD) in-depth as the disorder as described in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) requires exposure to actual or threatened death. A similar condition, which is not currently delineated in the DSM-5 has gained substantial discussion in the psychology literature. Complex Post Traumatic Stress Disorder (C-PTSD) is a condition that results from chronic or long-term exposure to emotional trauma over which a victim has little or no control and from which there is little or no hope of escape. C-PTSD can result from many of the situations that Ms. Ray-Leonetti experienced during her prior  [  ]    employment   [  ]  and in her home life
                        [                           ]
                                      . Ms. Ray-Leonetti's treating providers noted that Ms. Ray-Leonetti continues to display symptoms consistent with C-PTSD.

Post-traumatic Stress Disorder is a disorder that shares symptoms with both depression and anxiety. The symptoms can be intense and can wax and wane. Situations that remind an individual of prior trauma can cause the disorder to flare. It is my opinion that Ms. Ray-Leonetti's behavior towards the Clearys was at least in part propagated by complex-post-traumatic stress disorder. While deception is not part of the criteria for diagnosing PTSD, Ms. Ray-Leonetti's behavior can be seen as both reckless towards her clients and self-destructive. Recklessness and self-destructive behaviors are consistent with heightened arousal symptomatic of PTSD.

## VI.    Conclusion

To a reasonable degree of medical certainty, based upon the information currently available, Ms. Ray-Leonetti's historical bouts of anxiety and Major Depressive Disorder accompanied by derealization, echoes of past trauma when awake and while sleeping were elements of Complex-Post Traumatic Stress Disorder, which was not previously diagnosed. Professionals who have worked with Ms. Ray-Leonetti on a regular basis have consistently noted symptoms indicative of PTSD.

Barbara S. Rosenberg, Esquire
November 29, 2016
Page 8

I was initially resistant to this diagnosis given that Ms. Ray-Leonetti's life was never in danger as
required for the traditional PTSD diagnosis. However, she has experienced     [    .  ]
trauma resulting in symptoms reflective of PTSD. The diagnosis of complex-PTSD does not require
a life threatening event. Furthermore, C-PTSD does encapsulate the   [   ]       trauma Ms. Ray-
Leonetti described     [                         ]


Ms. Ray-Leonetti's prognosis is fair given her current symptoms of C-PTSD. It is clear that prior
treatments that were aimed solely at symptoms of depression and anxiety failed to address the entire
scope of the problem. It is also evident that Ms. Ray-Leonetti requires more intensive treatment
than has previously been engaged given that she has repeated her past reckless and self-destructive
behavior. I recommend that she enter an intensive treatment program to prevent further decline in
her mental wellbeing and to attempt to safeguard against further reckless and self-destructive
behavior. It is possible that she will regress during her intensive treatment. It is also possible that
she will need to take time off from work to complete the intensive treatment given the risk of her
mood state worsening during treatment. It would be prudent for Ms. Ray-Leonetti to be re-evaluated
after her intensive treatment. Likewise, it is recommended that she continue to practice law under
supervision and with continued psychiatric and psychological therapy.

Following my evaluation, Ms. Ray-Leonetti was referred to the University of Pennsylvania Center
for the Treatment of Anxiety (CTSA) for intensive treatment of C-PTSD. The CTSA evaluator
recommended that Ms. Ray-Leonetti undergo an intensive course of dialectical behavior therapy
(DBT) before engaging in specific trauma work in order to gain control over her impulsive and self-
destructive behaviors.

Ms. Ray-Leonetti was referred to Dr.     [C]              for an intensive therapy program that
will last for a minimum of one year. Dr.     [C's]         program is composed of individual
counseling, group therapy and telephone sessions. DBT teaches four sets of behavioral skills. First,
mindfulness - the practice of being fully aware and present in the moment. Second - distress
tolerance, how to tolerate pain in difficult situations, not change it. Third - interpersonal
effectiveness, how to ask for what you want and say no while maintaining self-respect and
relationships with others. Fourth - emotional regulation.

Ms. Ray-Leonetti has already begun to engage in weekly sessions with Dr.     [C]          . She
will begin group sessions that will focus on the skill building outlined above. The frequency of
sessions may increase to twice weekly if needed. In addition to individual group sessions, Dr.
     [C]      is available for phone counseling. When I spoke with Dr.      [C]        she
was aware of the seriousness of Ms. Ray-Leonetti's actions and the fact that she is an attorney, who
is currently on probation due to her actions. She believed that DBT could assist Ms. Ray-Leonetti
in obtaining skills to would aid in preventing future impulsive and self-destructive conduct.


Respectfully Submitted,

Barbara S. Rosenberg, Esquire
November 29, 2016
Page 9


Susan E. Rushing MD, JD
Diplomate of the American Board of Psychiatry and Neurology (ABPN)
Clinical Assistant Professor of Psychiatry
University of Pennsylvania, Perelman School of Medicine

# ATTACHMENT B

# REDACTED

REDACTED
RECEIVED
MAY 12 2017
DISTRICT I OFFICE OF
DISCIPLINARY COUNSEL



# ATTACHMENT C

# REDACTED

[A]         , MD

REDACTED

06/20/2017

To: Barbara Rosenberg, ESQ

   150 N. Radnor Chester Rd, Suite F200

   Radnor, PA 19087

RE: Jamie Ray-Leonetti   DOB:   [      ]

Ms. Ray-Leonetti has been under my care from 09/20/2016 until now.  We have been meeting monthly to review Ms. Ray Leonetti's treatment plan and response to medication. She has been diagnosed with chronic Post Traumatic Stress Disorder. Her medications have been the same over the duration of the current treatment. She is prescribed [      ] and [      ].       at bedtime as needed for anxiety.

She has been compliant with all treatment recommendations and takes all medication as directed.

The prognosis for Ms. Ray Leonetti is good provided she cont. to practice skills learned in treatment.

If you need further information, please contact me.

Sincerely,

[A]       , MD

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL, :
                      Petitioner :
                                 : No. 182 DB 2017
                                 :
          v.                     :
                                 : Atty. Reg. No. 84132
JAMIE RAY-LEONETTI,              :
                    Respondent : (Philadelphia)

## VERIFICATION

The statements contained in the foregoing Joint Petition
In Support Of Discipline On Consent Under Pa.R.D.E. 215(d)
are true and correct to the best of our knowledge or
information and belief and are made subject to the penalties
of 18 Pa.C.S. §4904, relating to unsworn falsification to
authorities.

_Feb. 12, 2018_
Date

Richard Hernandez
Disciplinary Counsel


Date

Jamie Ray-Leonetti, Esquire
Respondent

_2/5/18_
Date

Barbara S. Rosenberg, Esquire
Counsel for Respondent

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL, :
                    Petitioner  :
                                : No. 182 DB 2017
                                :
            v.                  :
                                : Atty. Reg. No. 84132
JAMIE RAY-LEONETTI,             :
                    Respondent  : (Philadelphia)

## VERIFICATION

The statements contained in the foregoing Joint Petition
In Support Of Discipline On Consent Under Pa.R.D.E. 215(d)
are true and correct to the best of our knowledge or
information and belief and are made subject to the penalties
of 18 Pa.C.S. §4904, relating to unsworn falsification to
authorities.

_____          _____
Date                               Richard Hernandez
                                   Disciplinary Counsel

2/9/18
_____          _____
Date                               Jamie Ray-Leonetti, Esquire
                                   Respondent


_____          _____
Date                               Barbara S. Rosenberg, Esquire
                                   Counsel for Respondent

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL, :
                       Petitioner :
                                : No. 182 DB 2017
                                :
             v.                  :
                                : Atty. Reg. No. 84132
                                :
JAMIE RAY-LEONETTI,            :
                 Respondent : (Philadelphia)

### VERIFICATION

       The statements contained in the foregoing Joint Petition

In Support Of Discipline On Consent Under Pa.R.D.E. 215(d)

are true and correct to the best of our knowledge or

information and belief and are made subject to the penalties

of 18 Pa.C.S. §4904, relating to unsworn falsification to

authorities.


_____      _____
Date                              Richard Hernandez
                                Disciplinary Counsel


2/9/18
_____      _____
Date                              Jamie Ray-Leonetti, Esquire
                                Respondent


_____      _____
Date                              Barbara S. Rosenberg, Esquire
                                Counsel for Respondent

BEFORE THE DISCIPLINARY BOARD OF THE
SUPREME COURT OF PENNSYLVANIA

OFFICE OF DISCIPLINARY COUNSEL, :
                Petitioner :
                        : No. 182 DB 2017
                        :
        v.              :
                        : Atty. Reg. No. 84132
JAMIE RAY-LEONETTI,        :
           Respondent : (Philadelphia)

## AFFIDAVIT UNDER RULE 215(d), Pa.R.D.E.

Respondent, Jamie Ray-Leonetti, hereby states that she consents to the imposition of a suspension of one year and one day, as jointly recommended by Petitioner, Office of Disciplinary Counsel, and Respondent in the Joint Petition in Support of Discipline on Consent and further states that:

1.    Her consent is freely and voluntarily rendered; she is not being subjected to coercion or duress; she is fully aware of the implications of submitting the consent; and she has consulted with Barbara S. Rosenberg, Esquire, in connection with the decision to consent to discipline;

2.    She is aware that there is presently pending an investigation related to File No. C1-16-474, involving allegations that she has been guilty of misconduct as set forth in the Joint Petition;

3.    She acknowledges that the material facts set forth in the Joint Petition are true; and

4.    She consents because she knows that if charges predicated upon the matter under investigation were filed, she could not successfully defend against them.

_Jamie May-Leonetti_
Jamie Ray-Leonetti, Esquire
Respondent

Sworn to and subscribed
before me this _9th_
day of _February_ , 2018.

_Rosemary B Cullen_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ROSEMARY B. CULLEN, Notary Public
City of Philadelphia, Phila. County
My Commission Expires July 22, 2018